F. M. SLAGLE & CO., Appellant, v. BUSHNELL, Respondent

(16 N. W.2d 914.)

(File No. 8655. Opinion filed December 21, 1944.)

**A. J. Beck,** of Elk Point, for Appellant.
**O. C. Donley,** of Elk Point, for Respondent.

SMITH, J. This appeal by plaintiff, in an action wherein it sought to recover from defendant a balance of about $1,200 for lumber, coal, and supplies delivered to defendant during a period extending from 1926 to 1937, confronts us with questions we propose to separately state and decide.

The defense of the statute of limitations, SDC 33.0232(4), was pleaded by way of amendment to the answer. The plaintiff contends that the record reveals a manifest abuse of discretion by the trial court in allowing the amendment.

The action was commenced in September, 1939. The complaint included an exhibit which itemized the charges and credits from which the claimed balance resulted. Twelve sheets of single spaced typing were required to set forth these items. The original answer consisted of admissions, denials and an averment of payment. When the answer was served counsel for defendant told counsel for plaintiff he did not intend to plead the statute of limitations. Thereafter, a pre-trial hearing was had in an attempt to narrow the issues. After some delay a referee was named to take the testimony of a particular witness, and subsequently a different referee was appointed to hear the testimony and find the facts. After the taking of testimony was completed, but before the issues had been argued and submitted to the referee for decision, the defendant made the motion to amend his answer. By that time, more than two years had elapsed since the action was commenced. Neither the failure to originally plead this defense nor the delay in seeking to amend was justified by the showing of the defendant. In resistance to the motion the plaintiff urged the facts we have recited plus the volume of testimony taken under the issues as previously framed. Quoting at length from the opinions of this court in Heegaard et al. v. Dakota Loan & Trust Co., 3 S. D. 569, 54 N. W. 656, and O'Neill v. Jones, 24 S. D. 79, 123 N. W. 495, plaintiff brands the statute of limitations as a technical defense and asserts that, because of the nature of that defense, it was error to allow the belated amendment in the circumstances.

A motion to amend a pleading is addressed to the discretion of the trial court. Cornell v. Johnson, 59 S. D. 617, 241 N. W. 740. This court is admonished by our rules to freely grant such applications in furtherance of justice. SDC 33.0914. When a ruling upon such a motion is presented for review, the question is not whether the judges of this court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion. Our function in reviewing matters which rest in the discretion of the trial court is to protect litigants from conclusions

which exceed the bounds of reason. 5 C. J. S., Appeal and Error, p. 476, § 1583.

█ In determining whether an amendment will further justice, it is proper for a court to consider the nature of a proffered new defense. In Heegaard et al. v. Dakota Loan & Trust Co., supra, the defense advanced after the testimony was closed in a jury case was one that plaintiff could have avoided by dismissing and commencing anew after complying with certain statutory requirements. This court reversed the trial court because it deemed unreasonable its ruling allowing the amendment. In O'Neill v. Jones, supra, the suggested new defense alleged that the payee in the notes in suit was a foreign corporation which had not complied with the statute requiring such corporations to appoint an agent for the service of summons at the time the notes were given. This court affirmed the ruling disallowing the amendment. No modern case has been called to our attention, however, wherein a reviewing court has reversed the ruling of a trial court allowing a plea of the statute of limitations by way of amendment. That defense was formerly in disfavor with the courts. However, it was Justice Story who wrote: "It has often been matter of regret in modern times, that, in the construction of the statute of limitations, the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that, instead of being viewed in an unfavorable light, as an unjust and discreditable defense, it had received such support, as would have made it what it was intended to be, emphatically, a statute of repose. It is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time, but to afford security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those prejudices which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them." Bell v. Morrison et al., 1 Pet 351, 26 U. S. 351, 360, 7 L. Ed. 174.

█ By the aid of such counsel the defense has gained in favor. It has been said that the statute of limitations

should not be discriminated against but should be treated like any other defense. Thomas et al. v. Price, 33 Wash. 459, 74 P. 563, 99 Am. St. Rep. 961. This court has held it to be a meritorious defense and has affirmed a ruling allowing it to be set up by amendment. Houts et al. v. Bartle et al., 14 S. D. 322, 85 N. W. 591. That ruling accords with the overwhelming weight of authority. 34 Am. Jur. 350; Walters v. Webster, 52 Colo. 549, 123 P. 952, Ann. Cas. 1914A, 24. See Wrightson v. Dougherty, 5 Cal. 2d 257, 54 P. 2d 13, and Davenport v. Stratton, Cal. Sup., 149 P. 2d 4.

■ We turn to a consideration of the circumstances we have described. The original pleadings revealed just such a controversy as the statute seeks to discourage. The complaint asserted stale demands and the defendant not only denied the verity of items of debt and credit alike, but pleaded payment. Aside from pointing out that counsel for defendant had the defense in mind at the time the original answer was served, the principal ground of resistance to the motion by the plaintiff was that it would be put to great inconvenience if it were required to reopen the testimony and deal with this new issue. For aught that appears the trial court reasonably could have concluded that the issue could be then as effectively met as though it had been originally pleaded. It is clear that the trial court was required to weigh in the balance the loss of an important and meritorious defense to defendant as against no more than serious inconvenience to the plaintiff. It cannot be said that it exceeded the bounds of reason in concluding that justice would be served by granting the motion.

In arguing these facts plaintiff urges a group of cases wherein courts of review have affirmed rulings disallowing a like amendment under somewhat similar circumstances. We think they are of doubtful value. They but decide that the trial court did not abuse its discretion. They do not hold that the ruling was impelled. A set of circumstances may afford room for a reasonable difference of opinion. By disturbing whichever ruling a trial court might have made in such an instance, a reviewing court would usurp its functions.

■ The amendment having been allowed, the plaintiff cannot now assert prejudice through surprise, because it failed to seek time and opportunity to cope with the additional defense. Lehman v. Smith, 40 S. D. 556, 168 N. W. 857, and Cornell v. Johnson, supra.

The views thus far expressed relieve us of the necessity of determining whether plaintiff lost his right to complain of the allowance of the amendment to the answer by subsequently serving an amended complaint and thereby investing defendant with a right to serve an amended answer embracing the challenged new defense. See Ann. Cas. 1918A, 211.

■■ The next contention of the plaintiff is that the described account meets the requirements of SDC 33.0236 and hence the plaintiff's cause of action accrued as of the date of defendant's last purchase on October 6, 1937. This contention is foreclosed by McArthur v. McCoy, 21 S. D. 314, 112 N. W. 155.

The cited section reads: "In an action brought to recover a balance due upon a mutual, open, and current account where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side". SDC 33.0236.

The cited case holds that an account such as the complaint of plaintiff describes, wherein merchandise is charged and payments credited, lacks the mutuality and reciprocity of dealing required to render the statute applicable. Since that pronouncement the statute has been re-enacted without change by the 1919 and 1939 revisions and it is presumed that the Legislature intended that it should continue to receive that construction. Brink v. Dann, 33 S. D. 81, 144 N. W. 734, and Stewart v. Rapid City, 48 S. D. 554, 205 N. W. 654.

Under two connected contentions plaintiff asserts that the established facts invoke the principle that an acknowledgment by a debtor of his debt within the statutory period before the commencement of the action removes the cause of action from the statute of limitations. The referee found for plaintiff for the full amount of its claims. The trial court,

on the other hand, took a different view of the evidence and through the application of the statute of limitations to all charges of the plaintiff for merchandise delivered more than six years prior to the commencement of the action, reduced plaintiff's recovery to the sum of $42.54. Plaintiff contends that defendant acknowledged the present existence of the debt in suit within the statutory period before the commencement of the action (1) by a writing and (2) by partial payments and thus started the statute running anew. We first look at the written acknowledgment.

It will be recalled that the action was commenced in September 1939. On June 9, 1938, counsel for plaintiff addressed a letter to defendant reading as follows:

"Dear Sir:

"F. M. Slagle & Company has informed me that it has an unpaid account against you for materials and supplies sold and delivered to you over a period which commenced May 11, 1926, and ended June 16, 1936.

The amount which was due on the latter date, exclusive of interest which had accrued, amounted to $1211.61. The Company has requested me and instructed me to bring action on this account. Those instructions were received quite some time ago.

"I shall be pleased to discuss the matter with you in case you have any suggestion or proposal which would avoid a lawsuit. I will delay the matter for a few more days before the Company's instructions are followed, so as to give an opportunity for such suggestions or proposals as you might have."

In response thereto defendant wrote counsel on June 10, 1938, in words as follows:

"Dear Mr. Beck:

"Your letter of June 9th at hand relative to F. M. Slagle & Co. and an unpaid account. As far as bringing suit for this amount is concerned, if that is the insistence of the company all well and good. I have offered to settle this account in various ways with this Company in as much as their representative owes me in the neighborhood of seven or eight hundred dollars, and it has been the understanding between

the individuals that it would be a settlement of both accounts by mutual agreement.

"However, he has failed to do this and consequently I have refused to pay the Slagle account. The last offer I made to the Company which I have heard nothing from, was that they bring pressure upon their representative to pay me and I would double the amount and return it to them on this account.

"If you cannot persuade them to a settlement that is nothing more than fair, I presume it will be necessary to take similar action against this Company and their agent.

"While there might be some question as to the amount of this account, still at no time has their been a studied effort to avoid a just settlement.

"I would be glad to hear from you further relative to this."

The question we are to decide is whether this letter of defendant interrupted the running of the statute.

 The issue must be resolved under common law principles. Those principles receive recognition in SDC 33.0213 reading as follows: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same be contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." The history of the development of those principles reveals that they originated through a holding of the courts that a new express promise by the debtor to pay his debt, whether then barred by the statute or not, fixes a new date from which to compute the statutory period of limitation. 34 Am. Jur. 233. As an outgrowth of that rule it was eventually held that a mere acknowledgment of the present existence of a debt would have a like effect. Of this development, 1 Williston, Contracts, Rev. Ed., § 160, states: "When it became the law that the mere existence of a debt gave the creditor, under the fiction of a promise implied by law, a right to treat the debtor as if he had made a promise to pay the debt, it was natural that an acknowledgment of indebtedness as distinguished from a promise should be held to justify the implication of

such a promise as would extend the bar of the Statute, especially as the circumstances frequently warranted the inference of a promise implied in fact; and on this new promise, whether implied in fact or simply imposed by the law the debtor became liable afresh."

■ As it is the new promise which interrupts the statute, which promise arises by inference or implication from the acknowledgment of the existence of the debt, it is impossible to escape the logical force of those decisions which hold the implication of such a promise is not warranted if there be anything in the terms of the writing, or in the circumstances under which it was made, which tend to repel such an inference or leave it in doubt. 1 Williston, Contracts, § 170; 34 Am. Jur. 240. See Dorsey v. Gunkle, 18 S. D. 454, 101 N. W. 36, 5 Ann. Cas. 810.

■ The quoted letter of defendant cannot be read in connection with the communication which brought it forth without concluding that defendant thereby acknowledged the present existence of an undischarged debt to plaintiff in an amount approaching the figure named in counsel's letter. As obviously, however, the letter of defendant negatives or repels the implication of a promise to pay that which he owed. In substance and effect, he said, "I will not pay. You may proceed with the threatened action unless you are interested in attempting to work out a compromise." In accordance with the principles to which we have adverted, we therefore hold that this acknowledgment of debt did not interrupt the running of the statute.

■■ There remains for consideration whether the payments made by defendant tolled the statute. According to common law principles a partial payment of a debt may, under certain circumstances, constitute such an acknowledgment of a larger debt as will raise an implication of a new promise to pay the balance and to set the statute running anew. This principle is recognized and preserved by SDC 33.0213, supra, by its final clause reading: "but this section shall not alter the effect of any payment of principal or interest." The rule may be invoked by a payment on an account, notwithstanding the fact that the account is not such

a mutual account as is described in SDC 33.0236, quoted supra. McCarthy Bros. Co. v. Hanskutt, 29 S. D. 535, 137 N. W. 286, Ann. Cas. 1914D, 889. The cases exemplifying the application of this principle to payments on accounts are collected in an annotation in Trenton Banking Co. v. Rittenhouse, 96 N. J. L., 450, 115 A. 443, 36 A. L. R. 343. There at page 351 of 36 A. L. R., it is written: "To sum up, the payment operates, not because it is an item of an account, but by virtue of an independent principle that a payment tolls the Statute of Limitations. This principle operates whether the payment is on an account, or on a note or other debt. However, in case of a payment on an account, some peculiar rules are involved because of the character of the debt, it being made up of various items."

In a case involving this theory of acknowledgment, as in the case of a written acknowledgment, the ultimate inquiry is whether the whole circumstances are sufficient to raise an implied new promise to pay the remaining debt. Wangsness v. Berdahl, 69 S. D., 586 13 N. W.2d 293; Day y. Mayo, 154 Mass. 472, 28 N. E. 898; Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497; Tippets v. Heane, 1 Cromp. M. & R. 252, 149 Eng. Reprint 1074.

In Crow v. Gleason, supra, it was stated: "In order to make a money payment a part payment, within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to, and accepted by, him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not, of itself, conclusive to take the case out of the statute. In order to have that effect, it must not only appear that the payment was made on account of a debt, but also an account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury infinding an implied promise to pay the balance."

The rule is elsewhere expressed as follows: "A. part payment to be effectual to interrupt the statute must be

voluntary on account of the debt in suit, and free from any uncertainty as to the identification of the debt on which it is made, and in this behalf it is said that no distinction can be made on principle between a written acknowledgment and part payment." 37 C. J. 1146.

In the case of an account all on one side the debtor has the undoubted right to pay particular items thereof. The rule applicable to such a payment is well expressed in Peck v. New York & L. U. S. Mail S. S. Co., N. Y. 1859, 18 N. Y. Super. Ct. 226, 5 Bosw. 226, as follows: "A specific payment directly appropriated to a specific item in such an account, leaves the statute to its operation as to the rest."

Another independent group of rules should be held up to view before we turn to the facts. By SDC 47.0207 it is provided:

"Where a debtor, under several obligations to another, does an act by way of performance in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

"(1) If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied;

"(2) If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; * * *."

It has been held that where a creditor, in the absence of an application or appropriation by the debtor, applies or appropriates a payment as a partial payment of a known debt against which the statute has not run, such payment will support an inference of acknowledgment of the balance as a subsisting debt and toll the statute. Ramsay v. Warner, 97 Mass. 8; 34 Am. Jur. 273; 1 Williston, Contracts, § 174.

We turn to the facts. We have indicated that the action was commenced in September of 1939. The major transactions between the parties preceded 1930 and were connected with rebuilding and repairs of farm improvements,

but scattering small purchases and payments continued until late 1937. The evidence is conflicting as to the amount or amounts of defendant's indebtedness remaining unpaid after 1929. It is established, however, that no part of whatever amount or amounts defendant owed to plaintiff was barred by the statute at the time several of the payments we are to consider were made. Without detailing the evidence upon which our conclusion rests, we hold that the clear weight thereof establishes that defendant knew he was indebted to plaintiff for purchases made in former years, as well as for current purchases, when these payments were made. We review the evidence to ascertain whether these payments support an inference that defendant thereby acknowledged the subsistence of the debt in suit.

Twenty-six payments were made during the six-year statutory period before the commencement of the action, ranging from $1.10 to $75.65. These payments were all in small amounts except for the one of $75.65 and another for $54.25 and were all represented by defendant's personal checks. The defendant testified that these checks were in payment of current items. During these years and prior thereto an office assistant of defendant ordered coal of plaintiff for supplemental heating at the office. After the coal was delivered, she would call plaintiff's local office, ascertain the amount, and eventually either mail or deliver defendant's check in the amount of one or more of such items. A study of plaintiff's records indicates that more than fifteen of the checks we are considering match items of purchase. The two larger payments to which we have made reference are somewhat different in character than the remaining payments and their relation to purchases should be described. They were made in November of 1934 and January of 1935, respectively. From plaintiff's records it appears that although some purchases were made during the spring, summer and fall of 1934, no payments were made until November. The payments then made, between November 4, 1934, and January, 1935, equal the purchases made during those months to a penny. Neither party has evidenced whether anything was said or written in connection with the delivery of any of these checks. Plaintiff's local agent was intimately acquainted

with defendant and knew that he was carrying on an extensive professional practice and operating a sizable farm in the vicinity.

█ Considered as a whole, the evidence by its clear weight establishes that defendant actually intended each respective check as in payment of some particular item or items of indebtedness and not as a payment on a general balance of account. It shows not only a comparative equivalence between current purchases and payments but an actual matching in most instances. It would be unreasonable to infer, in view of all the circumstances, that defendant on these numerous occasions drew his personal check in small odd dollar and cent amounts to reduce the considerable balance claimed by plaintiff. We think the evidence establishes an intention to pay current items of purchase. Was that intention made manifest to plaintiff?

█ In Tayloe v. Sandiford, 7 Wheat. 13, 20 U. S. 13, 20, 5 L. Ed. 384, it was stated: "A person owing money under distinct contracts, has undoubtedly, a right to apply his payments to whichever debt he may choose; and although prudence might suggest an express direction of the application of his payments, at the time of their being made; yet there may be cases in which this power would be completely exercised, without any express direction given at the time. A direction may be evidenced by circumstances, as well as by words. A payment may be attended by circumstances which demonstrate its application, as completely as words could demonstrate it." And see Cavanaugh v. Marble, 80 Conn. 389, 68 A. 853, 15 L. R. A., N. S., 127; Stone Co. v. Rich, 160 N. C. 161, 75 S. E. 1077, Ann. Cas. 1914C, 244, and Restatement, Contracts § 387, Illustration no. 4, p. 733. The statute we have quoted supra, SDC 47.0207, but constitutes a codification of these principles.

█ As we have indicated, all of the checks we are considering have a common characteristic. They are drawn in comparatively small odd dollar and cent amounts. By this characteristic we think they were plainly earmarked as specific rather than general payments. Through application of the rule of SDC 47.0207(1) appropriation by defendant of most of

these checks to particular items unquestionably resulted· as a matter of law. Because of his conversations with defendant's office assistant, and an exact correspondence between the amounts of particular checks and specific items or groups of items of purchase, the agent of plaintiff could not have failed to sense defendant's intended application thereof. If it cannot be said as a matter of law that the circumstances were sufficient to identify the exact items defendant intended to pay with all the remaining checks, it can be said that they did clearly make manifest to plaintiff that defendant did not thereby intend to make payment on a general balance of indebtedness. The whole circumstances surrounding these payments logically negative or repel an inference that defendant thereby intended a payment on the large general balance plaintiff then claimed as due. To infer from such circumstances an intention on the part of defendant to acknowledge the subsistence of the general balance, as a basis for raising a fictional new promise to pay that balance, would, in our opinion, be without warrant in reason or principle. Hence, we conclude as a matter of law that the evidence is insufficient to sustain a conclusion that these payments interrupted the running of the statute.

Finding no prejudicial error in. the record, the judgment and order are affirmed.

All the Judges concur.