Charles ALLEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–674.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1977.

Jim Jones, Sallisaw, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Charles Allen, hereinafter referred to as defendant, was charged, tried before a jury, and convicted in the District Court, Sequoyah County, Case No. CRF–75–13, of the crime of Second Degree Arson, in violation of 21 O.S.1971, § 1402. The jury fixed his punishment at five (5) years in the custody and control of the Department of Corrections of the State of Oklahoma and from this judgment and sentence the defendant has perfected a timely appeal to this Court.

The State called as its first witness Bobby Barbee, the superintendent of Central High School in Sallisaw, Oklahoma. The witness testified that on the 23rd of January, 1975, at approximately 3:20 a. m., he arrived at the school in response to a call and observed the entire building engulfed in flames. After the flames subsided only the walls of the structure remained.

James O'Neal testified that he was the janitor at Central High School, and that he and his family lived on the school grounds. At approximately 5:00 p. m. on January 22, 1975, the defendant, an acquaintance for some six years, came to his home to visit his two sons. His sons left with the defendant at approximately 10:20 p. m. and he next saw them all together at the school the following morning. At approximately 3:15 a. m. on January 23, 1975, he was awakened by his dog's barking and upon investigation he observed the school ablaze. He called to his wife to telephone Mr. Barbee and the fire department. O'Neal further testified that he heard an engine start and a vehicle leaving the area of the school.

Lynda Callahan testified that she was a secretary with the District Attorney's Office on January 23, 1975, when the defendant, in the presence of numerous law en-

forcement officials, gave a statement inculpating himself in the crime charged herein. She stated that she took shorthand notes of the statement, as well as recording the statement on tape. The witness further stated that she prepared a transcript of the defendant's statement from her notes and the tape and testified that it was a true and accurate transcription and that it fairly represented what was said. Ms. Callahan further testified that a portion of the tape had been accidentally erased. Lastly, she stated that defendant signed a rights waiver in her presence and that no threats or promises were made to the defendant as an inducement to confess.

John Nidiffer, an agent of the State Fire Marshall's Office, testified that he investigated the school fire, and it was his opinion the building had definitely been set on fire. He testified that he first observed the defendant at the scene of the fire at about 1:30 p. m. on January 23, 1975, at which time he placed the defendant in his car and took him to the District Attorney's Office where defendant was read his rights and signed a waiver in his presence. The defendant was told that he was not under arrest and that he was free to leave at any time. Agent Nidiffer testified that the defendant made a statement at about 4:45 p. m.

The next witness for the State was Deputy Sheriff Jim Rinehart who testified that he was also present when the defendant gave his statement and that the defendant acted voluntarily in all respects. The witness also identified a section of garden hose which he had found in the Fleetwood Cemetery.

Joyce Kroft testified that she was arrested with the defendant on January 23, 1975. She had met the defendant at 11:30 p. m. on the 22nd of January, 1975, at the Guys and Dolls Recreation center in Sallisaw, Oklahoma. About midnight she proceeded to "ride around" with the defendant in his car, together with Standell Robinson, Gary O'Neal, and Andy O'Neal. At approximately 1:30 a. m. on the 23rd of January, the defendant drove his car out to Central High School where he stopped the car to allow Andy O'Neal and Ms. Kroft to get out. She then lit a "bomb" which they had manufactured out of a beer bottle filled with gasoline and a sock, and Gary O'Neal threw it at the school; whereafter they fled. Ms. Kroft testified that prior to arriving at Central High School they stopped at the Fleetwood Cemetery; however, she was unable to identify the piece of garden hose. She further testified that she did not see the defendant set any fires that night, but she did see a burning barn when the defendant drove to an area atop a hill that night. She stated that later that night they returned to the school and observed that it was on fire.

The defendant's statement was essentially the same as Ms. Kroft's testimony, however, it also revealed that a siphon hose was used to transfer gasoline from the defendant's car into a quart beer bottle, and that defendant had thrown the siphon hose out of the car near the Fleetwood Cemetery. The defendant also admitted being with Gary O'Neal that morning while Gary set fire to a barn owned by a Mr. Masterson. The defendant stated that he stuck the sock into the beer bottle and that Gary lit it. The defendant failed to state any reason why he was involved with these fires. After the defendant's statement was read in open court, the State rested its case.

The defendant's first witness was John Quincy Adams who testified that he was Assistant District Attorney of Sequoyah County, and that immunity had been granted to Joyce Kroft and Standell Robinson.

The defendant next called Ted Stites who testified that he was Court Clerk for Sequoyah County and had been for 16 years, and that presently there was no order for immunity in the record. He also testified that Ms. Kroft and Ms. Robinson were originally co-defendants in the Central High School arson case until a severance was granted.

Defendant's first assignment of error asserts that the trial court erred in allowing the Assistant District Attorney over defendant's objection to make remarks in his

opening statement concerning other crimes of arson, and in allowing the transcript of the defendant's statement into evidence, which also referred to those other crimes.[1]

The defendant fails to assert any bad faith on the part of the Assistant District Attorney in his opening statement. In fact, the Assistant District Attorney stated that these other burnings were all in a series of transactions and that the evidence would bear out that it was a common scheme.

■ The general rule is that evidence of other fires is inadmissible under a charge of arson. However, this Court has recognized various exceptions to the general rule. In *Roulston v. State,* Okl.Cr., 307 P.2d 861, 868 (1957), this Court discussed at length the question of admissibility of evidence tending to point to other possible crimes in a criminal trial and delineated the recognized exceptions to the general rule as follows:

> "Obviously the courts have adopted five exceptions to the general rule whereby testimony of other offenses may become competent when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of crime for which he is on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. In order for the evidence in the case at bar relative to other offenses to be competent it must come within one of the above categories. . . ." (Citations omitted)

■ The evidence of the prior acts of arson tends to prove a common scheme or plan. This is clearly within one of the recognized exceptions of the general proscription and is competent evidence. The evidence introduced is also relevant to prove that the defendant harbored the specific wilful and malicious intent to burn. We find defendant's first assignment of error to be without merit.

Defendant's second assignment of error is that the trial court erred in allowing the State to introduce into evidence the transcribed statement of the defendant. The defendant contends that the statement, which was recorded on tape and taken down in shorthand, and later transcribed by a secretary in the District Attorney's Office, was not admissible because the completed transcription was never tendered to the defendant for his acknowledgement, signature, or correction. Defendant further contends that the secretary who prepared the transcription was biased in favor of the prosecution inasmuch as she was an employee of the District Attorney, and further that the transcription materially differed from that which was actually said.

■ The mere fact that the statement was unsigned and unacknowledged by the defendant does not render it inadmissible in Oklahoma. See, *Prather v. State,* 76 Okl.Cr. 385, 137 P.2d 249 (1943). This is so because the person who prepared the statement was available for, and was in fact cross-examined on, the accuracy and veracity of the statement. The better procedure, of course, would be to tender the statement

1. The Assistant District Attorney, in his opening statement, remarked as follows:

> "[A]nd that they went to certain areas in Sequoyah County. First, they stopped at a barn and set fire to the hay in the barn—"
>
> * * * * * *
>
> "[T]his is all in a series of transactions and one act would follow the act of the other. I would be the first to agree that he only stands charged with the burning of the school building." (Tr. 6)

Also during an in camera hearing, the Assistant District Attorney made the following statement to the trial court:

> "There is no way we can allege in the Information—it is one scheme and one burning, the evidence will bear out that it was a common scheme. I don't see that there is anything that might be prejudicial, because it is just a series of events that led up to the crime charged in the Information. . . ." (Tr. 7–8)
>
> * * * * *. *
>
> "Now, they will testify they met with these three young men at Guys and Dolls, which is a recreation area in Sallisaw, and they went out on the highway, and they will testify to the location, and so forth, and set fire to a barn; . . ." (Tr. 12)

back to the defendant for his approval. However, a failure to do so does not for that reason alone render the statement inadmissible as a matter of law.

■ Defendant's other propositions with regard to the admission of his statement are likewise without merit. The alleged bias of the secretary who transcribed the statement was an issue for the jury affecting her credibility and was not pertinent to the admissibility of the statement. The fact that she worked for the District Attorney was brought out on direct examination, and questions relative to her possible bias were propounded on cross-examination. Additionally, the fact of her possible bias was argued by the defense during closing argument under a standard instruction on the credibility of a witness.

■ Similarly, defendant's complaint that the transcription was not accurate was also a question of fact for the jury. The defendant's attorney questioned Ms. Callahan as to her methods in preparing the transcription from her shorthand notes and from the tape recording. While on the stand as a defense witness, Ms. Callahan was further asked if she had reviewed her notes, the tape recording and her transcription, and if after such review she wished to change her testimony relative to the transcription's accuracy. Her answer to this was in the negative. Lastly, defendant had admitted into evidence over the State's objection that portion of the tape recording which had not been erased. After playing the tape to the jury, defense counsel pointed out to them numerous discrepancies between the tape and the transcribed statement. The jury was permitted to take both the written statement and the tape into the jury room during their deliberation.

In short, the jury was amply appraised of both the potential bias of the transcriber and of the inaccuracies in the transcription. Such matters go to the weight and credibility of the evidence and are matters properly within the province of the jury. By their verdict they have obviously rejected the defendant's factual contentions, and since the statement is otherwise admissible under the rule in *Prather v. State,* supra, we will not disturb their verdict.

■ The defendant's third assignment of error is that the defendant's conviction cannot stand upon the uncorroborated testimony of an accomplice, Joyce Kroft, a co-defendant who was granted immunity. This proposition is apparently predicated upon our finding that defendant's statement was inadmissible. However, since we hold that the statement was admissible it thereby provides sufficient corroboration of the accomplice's testimony to directly link the defendant to the commission of the crime. There being such corroboration, the defendant's third assignment of error is without merit.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

BLISS and BRETT, JJ., concur.