**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Hubert Lawson WEDEMANN, Defendant and Appellant.**

**No. 13964.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1983.

Decided Oct. 12, 1983.

Mikal Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

George J. Rice of Rice & Bowen, Aberdeen, for defendant and appellant.

FOSHEIM, Chief Justice (on reassignment).

Defendant Hubert Lawson Wedemann was convicted of arson in the second degree.[1] We affirm.

Defendant claims: (1) the evidence was insufficient to support the verdict; (2) the trial court should not have admitted evidence of his association with earlier fires; and (3) the trial court erred in refusing to instruct the jury that mere presence at the scene of the crime is not enough evidence to convict.

In determining the sufficiency of evidence the test on appeals in criminal cases is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. In our review, we accept the evidence which supports the verdict and the most favorable inferences that can fairly be drawn therefrom. *State v. Jorgensen*, 333 N.W.2d 725 (S.D.1983); *State v. Dietz*, 264 N.W.2d 509 (S.D.1978).

In this light the following facts emerge. A divorce action was initiated by defendant's wife. Although Mrs. Wedemann had been awarded temporary possession of a jointly-owned mobile home, her husband occupied it with her consent.

[1]. SDCL 22–33–2 reads:

Any person who intentionally sets fire to or burns or causes to be burned any occupied structure under circumstances which would not amount to arson in the first degree is guilty of arson in the second degree. Arson in the second degree is a Class 2 felony.

On the day of the fire, the Wedemanns met for marriage counseling in Aberdeen. Mrs. Wedemann told her husband that she was going through with the divorce. Mr. Wedemann returned briefly to the mobile home at 6:30 or 7:00 p.m. and then went to a local bar known as "The Club."

Mrs. Wedemann was staying at her parents' home across the street from The Club. Mr. Wedemann called her and told her she was in big trouble. A few minutes later Mrs. Wedemann called him back to inquire why she was in trouble. They argued and hung up. Upon a second call to The Club, Mrs. Wedemann told her husband to vacate the mobile home immediately. She then had her brother John Roemmich lock the mobile home doors so that her husband could not enter.

Mr. Wedemann left The Club sometime between 8:30 and 9:00 p.m. John Roemmich saw the Wedemann car parked near the mobile home at approximately 9:00 p.m. Shortly after 10:00 p.m., the Mellette firemen responded to a fire at the Wedemann residence.

The fire which caused extensive damage originated in a middle bedroom, where a box of clothing had been saturated with cigarette lighting fluid and ignited. The fire smoldered before breaking into flames and then burned for thirty to forty-five minutes before being contained. Several expert witnesses testified the fire was not started by natural causes. Even the defendant testified there was no question in his mind but that the fire was deliberately set.

The arsonist had gained entry by forcing in the north door. This door was guarded by a dog that would allow only certain persons, including the defendant, to enter.

The defendant testified he first learned of the fire two days after it occurred. There was testimony, however, that he discussed it at least twice within that time.

At trial, the court permitted the State to introduce evidence of three earlier fires to defendant's property, namely:

(1) A fire occurring on November 30, 1973, at approximately 6:00 a.m., to a residential building owned by defendant and his wife on a lot adjacent to the mobile home in Mellette;

(2) A fire occurring on July 11, 1976, at approximately 12:50 p.m., in a mobile home owned by the defendant at South Sioux City, Nebraska, which was being repossessed;

(3) A fire occurring on March 11, 1977, at approximately 5:45 a.m., to the same residence as the first fire.

The Mellette Fire Department concluded that the first and third fires had been intentionally set. The cause of the second fire was not officially determined, although it, too, had an arson motive.

■ The facts raise numerous fair inferences that the defendant intended to, and did, start the fire. We will not set aside a guilty verdict if the evidence and reasonable inferences flowing from it sustain a rational theory of guilt. *State v. Dickson,* 329 N.W.2d 630 (S.D.1983). We conclude the evidence was sufficient to support the jury verdict.

Defendant contends the trial court abused its discretion when, pursuant to SDCL 19–12–5,[2] it admitted evidence of the prior fires to show identity, motive, intent, knowledge, or plan.

Before the adoption of Rule 404(b) of the Federal Rules of Evidence (SDCL 19–12–5), jurisdictions were divided as to whether under case law it could be shown that at some previous time a building belonging to the accused arsonist burned. Wigmore on Evidence § 354(10) (1979); Underhill's Criminal Evidence, Fifth Edition, § 713 (1957). South Dakota has never had occasion to adopt either view. We need not do

---

**2.** SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

so now. The relevancy of the prior fires can be decided under SDCL 19–12–5. The fact that many courts held prior fires to be relevant without the benefit of a Rule 404(b) does, however, prompt us to apply SDCL 19–12–5 with some measure of latitude as it relates to the crime of arson.

In ruling on the admissibility of evidence of other crimes, wrongs, or acts the trial court must first determine its relevancy and then decide whether its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Brown,* 285 N.W.2d 843 (S.D.1979); *See* SDCL 19–12–3.[3] Balancing probative value against the risk of unfair prejudice is a delicate function of the trial judge in the exercise of discretion. *State v. Johnson,* 316 N.W.2d 652 (S.D.1982); *State v. Brown,* supra; *State v. Houghton,* 272 N.W.2d 788 (S.D.1978).

After conducting an extensive pretrial hearing in which nine people testified, the trial court properly entered findings of fact and conclusions of law. *State v. Holiday,* 335 N.W.2d 332 (S.D.1983); *State v. Volk,* 331 N.W.2d 67 (S.D.1983); *State v. Hartley,* 326 N.W.2d 226 (S.D.1982). The court concluded that evidence of the three prior fires was relevant under SDCL 19–12–5 and that the probative value of the evidence outweighed any unfair prejudicial effect.

Our standard of review is whether the trial court abused its discretion in admitting the evidence. *State v. Dace,* 333 N.W.2d 812 (S.D.1983); *State v. Houghton,* supra. In that review "[w]e are bound by the rule that the question is 'not whether the judges of this Court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion.'" *State v. Rose,* 324 N.W.2d 894, 895–96 (S.D.1982) (quoting *F.M. Slagle & Co. v. Bushnell,* 70 S.D. 250, 16 N.W.2d 914, 916 (1944)). We

find no weakness in the finding of relevancy and no abuse of discretion in the decision to admit the evidence.

Although the defendant was not prosecuted for the previous fires, they were relevant to the issues at trial. Defendant collected insurance on two fires. Repossession was avoided in the other. These mysterious, beneficial fires involving the defendant's property suggest identity, motive, knowledge, intent and plan. SDCL 19–12–5 does not require the other acts to be criminal or even wrongful. *State v. Dace,* supra. In *State v. Johnson,* supra, at 654, we said "[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value."

In *State v. Johnson,* supra, and *State v. Pedde,* 334 N.W.2d 41 (S.D.1983), we sanctioned the admissibility of recent similar acts. Other jurisdictions seem to be in accord that the prior acts, if too remote, lose their relevancy. *See, e.g., State v. Maestas,* 224 N.W.2d 248 (Iowa 1974). We have not before been required to define or measure the vintage limitations which render prior acts too remote. Whether prior acts are too remote must realistically depend upon their nature. *Cf.* Wharton's Criminal Evidence, Thirteenth Edition, § 260 (1972). A purse snatcher or burglar can commit similar acts in rapid succession. An arsonist who directs his crime against his own property is limited as to frequency. He must wait for the embers to cool and the smoke to clear. He must then rebuild or repair the building and likely look for, and secure, another insurer. Finally he must wait for an opportune time to burn again. Considering the nature of the offense, we conclude the prior fires were not too remote from each other, or from the crime charged, to show identity, motive, intent, knowledge or plan.

Defendant disputes the trial court's refusal to give this instruction:

---

**3.** SDCL 19–12–3 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the absence of evidence of participation, a defendant cannot be convicted on the basis of his presence at the scene of the crime.

It is the rule that mere presence at the scene of a crime does not make a person a participant. It is, however, a circumstance which tends to support a finding of participation and, with other facts and circumstances, may establish guilt. *State v. Vogel,* 315 N.W.2d 321 (S.D.1982); *State v. Robb,* 303 N.W.2d 368 (S.D.1981); *State v. Schafer,* 297 N.W.2d 473 (S.D.1980). If the evidence of defendant's guilt had consisted mainly of his presence at the scene, the instruction would have been appropriate. In this case, however, there was not an absence or inadequacy of participation evidence.

The trial court's duty to instruct was discussed in *Jahnig v. Coisman,* 283 N.W.2d 557, 560 (S.D.1979):

The trial court has a duty to instruct the jury on applicable law where the theory is supported by competent evidence.... Refusal to give a requested instruction setting forth applicable law is not only error, but prejudicial error.... It is not error, however, to refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction.... Instructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law.... [citations omitted].

*See also State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980).

Taken as a whole, the instructions adequately cautioned the jury as to the burden of proof and the evidence required to convict. Considered as a whole they gave a full and correct statement of the applicable law. The trial court did not err in refusing the specific offered instruction.

The defendant's conviction of arson in the second degree is affirmed.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I dissent. The Advisory Committee's Note under Federal Rule of Evidence 404(b), from whence the identical SDCL 19–12–5 is drawn, contains this illuminating passage: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence *in view of the availability of other means of proof* and other factors appropriate for making decisions of this kind under Rule 403." (Emphasis supplied.) As revealed in the facts herein, several other means of proof were clearly available and employed in the trial below. It was unnecessary for the State to overreach and use remote-in-time, factual circumstances which the majority concludes to be "mysterious." In *State v. Houghton,* 272 N.W.2d 788, 793 (S.D.1978), we affirmed an exclusion of prior wrongs evidence, holding in part: "Thus the state should proceed to present the considerable evidence available in the present case without attempting to inject prejudicial testimony of other activities of defendant."

The Advisory Committee's Note also cites Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L.Rev. 325 (1956), which begins with the fundamental premise:

Strongly entrenched among many American traditions is the concept that man should not be judged strenuously by reference to the awesome spectre of his past life. When one faces trial for a specific crime, he should not be held to answer for the scandal that his earlier vices would most certainly produce. Though he has committed many crimes under circumstances which would increase the probability that he has committed the crime charged, it remains an unalterable fact that members of the jury, of nobler root, will lend excessive weight to a record of crime.

Slough & Knightly conclude their article by reflecting on the value of rules such as SDCL 19–12–5:

In attempting to construct a program of justice, authors of the common law and

their adherents have fashioned a set of rules by which mortal men might better judge the misdeeds of their contemporaries.... Imbedded in these very principles is the constitutional concept that one is presumed innocent until proven guilty [*see State v. Holmes*, 338 N.W.2d 104, 105 (S.D.1983) (Henderson, J., dissenting)], and closely allied is the premise that man should not be judged in light of the abominations of his past. [*See State v. Iron Shell*, 336 N.W.2d 372, 375 (S.D.1983) (Henderson, J., dissenting).] Such thoughts are good, clean judicial thoughts, spun in an atmosphere detached from the spontaneity of courtroom decision.

*Id.* at 349.

As we held in *Houghton*, a finding that prior wrongs are relevant is but one step in the analysis of admissibility: "[T]he trial judge should, in an exercise of sound discretion, exclude evidence tending to show the commission of other crimes 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" *State v. Houghton*, 272 N.W.2d at 791, n. 11 (quoting *United States v. Kahaner*, 317 F.2d 459 (2nd Cir.1963), *cert. denied*, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963)). The prejudicial taint that must be zealously guarded against in considering prior wrongs is that: (1) the jury might convict a person simply because they perceive him as a bad person who committed prior unpunished crimes; and (2) the jury might infer that the commission of one bad act indicates a propensity to commit the bad act in question. *See* Comment, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 Yale L.J. 763 (1961).

One of the critical safeguards against prejudice infused into SDCL 19–12–5 via our case law is that the prior incidents must be close in time rather than remote. *State v. Johnson*, 316 N.W.2d 652 (S.D.1982).[1] In *State v. Pedde*, 334 N.W.2d 41 (S.D.1983), we further clarified this closeness-in-time

factor to mean not only that the prior incidents be close in time to each other, but that they be close in time to the charged offense at bar.[2] *See also, United States v. Two Eagle*, 633 F.2d 93, 96 (8th Cir.1980) (for federal law requiring the same concept of closeness). *See generally, Garcia v. Aetna Cas. & Surety Co.*, 657 F.2d 652 (5th Cir.1981) (reversing a trial court's admission of a prior fire into evidence); *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401 (5th Cir.1980) (employing closeness-in-time analysis in an arson setting). Here, the prior fires occurred in 1973, 1976, and 1977, while the fire at bar occurred in 1981. Suffice it to say, a factual fire setting eight years, five years, and four years, eight months prior to this fire, is not close in time to the offense charged at bar. It must be emphasized that appellant has never admitted to nor been charged with setting any of the prior three fires. The State admits in its brief that the cause of the Sioux City, Nebraska fire was undetermined. Hence, the trial court's ruling was not only erroneous and prejudicial to receive the Nebraska fire into evidence, but was a reckless disregard for the rules of evidence and precedent thereunder. This dissenting expression follows the general rule in the United States and not the minority rule as espoused by the majority opinion. *See* Annot., 87 A.L.R.2d 891 (1963).

Several cases hold that evidence of prior fires is generally inadmissible in arson cases:

(1) In *People v. Miller*, 13 Ill.Dec. 128, 55 Ill.App.3d 421, 370 N.E.2d 1155 (1977), the Illinois Court limited two prior Illinois decisions which held that evidence of "other" fires could be introduced to show that all of the fires were committed as part of a connected scheme or purpose. The *Miller* Court held that the prior fires must have a close connection, namely they must occur "at or about the same time and in the same immediate area as did the arson for which defendant was charged." *Miller*, 370

---

1. In *Johnson*, 316 N.W.2d 652, the prior crimes took place within a few months of each other.

2. In *Pedde*, 334 N.W.2d 41, the prior crime occurred within one month before the crime at bar.

N.E.2d at 1159. The *Miller* Court went on to hold:

> [T]he fires occurred independently of each other, on different dates and at different locations. Therefore, the mere fact that this is an arson case will neither suspend the general rule barring the introduction into evidence of other crimes, nor dispense with the foundation which must be laid before an exception to that rule can be made.[3]

*Miller,* 370 N.E.2d at 1160;

(2) In *People v. Vincek,* 75 A.D.2d 412, 429 N.Y.S.2d 928 (1980), defendant's residence had burned four years earlier in 1974. The 1974 fire started behind the freezer and occurred right after defendant's wife left him. A 1978 fire in defendant's residence started behind the refrigerator and defendant's wife had once again just left him. The New York Court ruled that admitting evidence of the 1974 fire was reversible error because "in a prosecution for arson, evidence proving or tending to prove a prior arson is not admissible unless it is shown to be directly probative of the crime charged . . . ." *Vincek,* 429 N.Y.S.2d at 931. The New York Court ruled that this evidence was highly prejudicial because it could not be demonstrated that the prior fire "was intentionally set by or at the instance of the defendant . . . ." *Vincek,* 429 N.Y.S.2d at 930;

(3) In *Allen v. State,* 560 P.2d 1030, 1033 (Okla.Cr.App.1977), the Oklahoma Court of Criminal Appeals stated: "The general rule is that evidence of other fires is inadmissible under a charge of arson.";

(4) In *Moreland v. State,* 373 So.2d 1259 (Ala.Cr.App.1979), a fire occurred in defendant's residence at 5:08 a.m. on September 16, 1978. A fire inspector testified that this early morning fire was arson. Later the same day at 9:35 p.m., another fire occurred in a different room at defendant's residence.[4] Fire officials also called this fire arson. Defendant was tried for the morning fire and evidence of the evening fire was introduced. The Alabama Court reversed defendant's conviction holding the evening fire was inadmissible because evidence was unavailable to show it was defendant who committed the second arson;

(5) In *State v. Pitts,* 30 Or.App. 1, 566 P.2d 182 (1977), the Oregon Court reversed an arson conviction upon the following fact pattern: (a) after defendant and his landlord argued, defendant, in frustration, started several grass fires; and (b) after a later argument between defendant and his landlord, the landlord's garage was burned. The Court held the probative value of the grass fire evidence was quite low compared to the high danger of undue prejudice. The Court also noted that the prior fires evidence was barred by "the general rule that evidence that a person has engaged in certain conduct is not admissible to prove that he engaged in similar conduct at another time." *Pitts,* 566 P.2d at 183;

(6) In *State v. Lynch,* 279 N.C. 1, 181 S.E.2d 561 (1971), the North Carolina Court ordered a new trial where evidence of defendant's involvement of other fires was allowed. The Court held that the prior fires were highly prejudicial and irrelevant to the fire for which defendant was charged.

The majority opinion allows the use of "mysterious" fires to convict a man. When, in the course of this Nation's history, did the law start to convict people on mysterious circumstances? Our rules of evidence evolved to prohibit unreliable, unprobative prejudicial facts from going into evidence. You cannot throw in an evidentiary kitchen sink to convict someone. Where will the boundless, amorphous majority rule end? The State possessed a plethora of probative evidence to place before the jury; yet, in a classic case of prosecutorial overkill, the State successfully painted appellant as a firebug. Mystery, as a basis of proof, is not

---

**3.** Likewise, SDCL 19-12-5 does not single out arson cases for special relaxed evidentiary treatment as does the majority opinion.

**4.** This pattern is directly contrary to the majority opinion's unsupported assumption that arsonists must wait several years between each fire.

very far removed from rumor and scandal. People should not be convicted by rumor, scandal, blabber, mystery, and suspicion. We must not degrade our standards of proof simply because this is an arson case. I cannot agree that suspicion of appellant's association with three prior fires springboards a legitimate acceptance of this evidence before the jury. It is, in effect, guilt by association. Thus, I would hold the limited probative value of the prior fires is outweighed by the formidable prejudicial effect of this evidence. The trial court abused its discretion by allowing the prior fires into evidence at trial.

I would reverse and remand with directions that appellant be granted a new trial for he did not receive a fair trial below.