**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Scott MEANS, Defendant and Appellant.**

**No. 14542.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 28, 1984.

Decided Feb. 27, 1985.

state's constitution.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jana Miner, Rapid City, for defendant and appellant.

FOSHEIM, Chief Justice.

Scott Means (Means) appeals his conviction for sexual contact with a child under age fifteen. SDCL 22–22–7. Means was initially charged with two such counts. One count was dismissed. He was tried and convicted on the remaining count.

Means, a 70-year-old man, was a family friend of Rose and Michael Neuffer and their daughters, Marcie, age ten, and Lauren, age eight. The Neuffer family and Mr. Means all resided in Gillette, Wyoming. In August of 1983, Michael's step-mother, Janice Neuffer, visited the family. On August 28, Means was invited to accompany them on a tour through the Black Hills of South Dakota. Michael and Rose were in the front seat; Means and Janice sat in the backseat. Marcie and Lauren alternately sat either in the backseat or behind the backseat in a cargo area.

After leaving Gillette, the group stopped at a convenience store in Custer, South Dakota. Everyone left the car except Means and Marcie. Marcie was seated against the backseat in the cargo area. She testified that Means at that time "rubbed me." When asked where he was rubbing her, she stated "on my backside" and "he was just rubbing me all around." She also testified that "usually he would just joke and hit me or something, but this time he didn't, he wasn't joking." When the others returned, Means stopped and Marcie remained in the back cargo area.

After the Custer stop, the journey continued to Hill City, and Marcie testified that Means again began rubbing her. This time, she said he tried to touch her "where I go to the bathroom." Marcie then "scrunched up" and moved away from him so that she was behind her grandmother, Janice.

The parties later stopped at Castle Peak Campground. While there, Marcie, Lauren, and Janice went wading in a stream. Lauren fell into the water. Her mother had her take off her wet shorts so they could dry. Lauren was then wearing a T-shirt and her underpants.

When the group moved on toward Rochford, Lauren crawled into the cargo area of the vehicle. Marcie's testimony indicated that Lauren was then inside a sleeping bag, but Lauren testified that she was under the sleeping bag. Means and Janice were in the backseat. Marcie was between them. Janice was holding the shorts out the window to dry.

Lauren testified that enroute to Rochford, Means "reached back and went down." She testified that she "got touched on my front private parts" and that "he went down there and started feeling around a little." "I mean where I go to the bathroom." Lauren testified that she "scrunched up" and tried to kick him away. Her testimony indicated this type of activity occurred twice more during the trip. She said the first time Means touched her outside her clothing, but that on the next two times he touched her inside her clothing "on my front private parts," using "four fingers."

The two girls discussed Means' behavior but said nothing about it to their parents until three days later. Janice had then returned to her home in Alabama. Both girls testified they waited to inform their parents until after Janice left because they thought she and Means were "having a relationship," and they feared Janice would be angry with them.

Brenda Tellez testified that in 1980, while Means was sitting with her on a loveseat in her parents livingroom, he started massaging her leg. He told her he used to be a "massager." Her parents were then watching television with them, but would frequently leave the room to work on a washer and dryer. Brenda testified that at one point Means "stuck his hand in my panties" and touched her "outside my vagina." She said she immediately slapped his hand, told him not to do that, and left the room. After Means left, she told her mother of the incident. The mother testified that she reported the incident,

but the state's attorney didn't pursue the matter.

Means challenges the admissibility of the testimony of Marcie Neuffer and Brenda Tellez. The trial court conducted pre-trial hearings and heard arguments from counsel. Findings of fact and conclusions of law were then appropriately entered. *State v. Wedemann,* 339 N.W.2d 112 (S.D. 1983). The trial court admitted this testimony under SDCL 19–12–5[1] to show motive, opportunity, intent, state of mind, preparation, plan, knowledge, identity or absence of mistake.

■ In ruling on the admissibility of evidence of other crimes, wrongs, or acts, a trial court must first determine relevancy. *Wedemann, supra.* "Any fact that tends to connect an accused with the commission of a crime is relevant and has probative value." *State v. Dace,* 333 N.W.2d 812, 816 (S.D.1983), *quoting from State v. Johnson,* 316 N.W.2d 652 (S.D.1982). "Such other incidents are material if they show a plan or system of criminal action and acts constituting continuous offenses." *Id.* If the trial court determines the evidence is relevant, it must then decide whether the probative value of the evidence substantially outweighs its prejudicial effect. If, although relevant, the court decides its admission will produce unfair prejudice to the defendant, it cannot be admitted. *Dace, supra; Wedemann, supra; State v. Iron Shell,* 336 N.W.2d 372 (S.D.1983); *State v. Brown,* 285 N.W.2d 843 (S.D.1979); *State v. Houghton,* 272 N.W.2d 788 (S.D.1978); SDCL 19–12–3. This delicate balancing process is within the trial court's sound discretion. *Dace, supra; State v. Holland,* 346 N.W.2d 302 (S.D.1982); *Wedemann, supra; Houghton, supra.* The question on review is whether the trial court abused that discretion. *Wedemann, supra; Houghton, supra; Brown, supra.*

Means contends the State used the evidence primarily to prove intent to arouse sexual gratification, and because he denies any touching he reads *State v. Rose,* 324 N.W.2d 894 (S.D.1982), to remove the question of his intent in making the contact. He also relies on *Houghton, supra,* and claims the trial court abused its discretion in finding that the probative value of the evidence substantially outweighed its prejudicial effect. *See also,* SDCL 19–12–3.

■ Appellant misreads *State v. Rose, supra.* The State has the burden of proving each element of an offense beyond a reasonable doubt. *State v. Brewer,* 266 N.W.2d 560 (S.D.1978); SDCL 23A–22–3. An essential element of the crime charged is the specific intent to arouse or produce sexual gratification. SDCL 22–22–7; SDCL 22–22–7.1. His denial that he touched Lauren does not relieve the State of the burden of proving both contact and the requisite intent. SDCL 22–22–7, 7.1; SDCL 23A–22–3; *Brewer, supra; Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281, 292 (1977). The *Houghton* case is distinguishable. In *Houghton,* the alleged crime was rape; which is a general intent offense. The trial court had refused evidence of two other alleged rapes. Thus, the test before this court on appeal was whether disallowance, rather than allowance was an abuse of discretion.

The prior acts with Marcie and Brenda were similar in nature to the crime charged. *See, Dace, supra.* Means had become a good friend of the families in both instances. Marcie's testimony showed an incident contemporaneous with the crime charged. Brenda's testimony involved an event three years earlier. We do not believe this is too remote. *State v. Wedemann,* 339 N.W.2d 112 (S.D.1983). In *Wedemann,* we said, "whether prior acts are too remote must realistically de-

---

1. SDCL 19–12–5 provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

pend upon their nature." *Id.* at 115. Means had to first develop a relationship of trust with the families, and then wait for an opportunity to act. *Compare, Wedemann, supra* at 115.

■ The jury was given limiting instructions prior to each girl's testimony on the proper use to be made of the evidence. Juries are presumed to follow instructions of the trial court. *State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58 (1963). The evidence indicated Mean's intent, motive, opportunity, state of mind, preparation, plan, knowledge, or absence of mistake. We cannot conclude that the trial court abused its discretion in finding that the evidence was relevant, or that its probative value was not substantially outweighed by its prejudicial effect.

Means next disputes the trial court's ruling that the State could use his prior felony conviction for impeachment purposes under SDCL 19–14–12(2), because its probative value was substantially outweighed by the danger of unfair prejudice. Means was convicted of child molestation in 1975. The trial court ruled in limine that if the defendant elected to testify, the fact of the prior conviction would be relevant evidence pursuant to SDCL 19–14–12(2) for impeachment purposes, but limited the State to asking if he had been convicted of "a felony," without revealing the specific child molestation crime. Means argues that the admission of the prior conduct (Marcie's and Brenda's testimony) and the allowance of the prior felony conviction for impeachment purposes had the cumulative effect of unfair prejudice.

■ We disagree. In *Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the United States Supreme Court held that a defendant must testify to raise and preserve for review a claim of improper impeachment with a prior conviction. *Id.* at ——, 105 S.Ct. at 464. We adopt the holding and rationale stated in *Luce,* and hold that Means did not preserve this issue for review on appeal. The

trial court's ruling would also be upheld under existing South Dakota authority. Since defendant chose not to testify, this evidence was never heard by the jury, and did not affect the result. *See, Dace, supra,* at 115. The trial court apparently did consider the prejudice aspect, and for that reason limited the evidence to "a felony." This procedure was approved in *State v. Dickson,* 329 N.W.2d 630, 633 (S.D.1983). *See also, State v. Waller,* 338 N.W.2d 288 (S.D.1983). Means' argument that this ruling chilled his right to testify was resolved against him in the *Dickson* case. *Dickson, supra; see also, Luce, supra,* —— U.S. at —— – ——, 105 S.Ct. at 464. The ruling was not erroneous.

Finally, Means claims ineffective assistance of counsel because his attorney failed to request a jury instruction on the defendant's right not to testify. He argues that had counsel requested, but been refused the self-incrimination instruction, this Court would undoubtedly rule it was error. *State v. Oswald,* 241 N.W.2d 566 (S.D. 1976); *State v. Strickland,* 87 S.D. 522, 211 N.W.2d 575 (1973).

■ In *State v. Tchida,* 347 N.W.2d 338 (S.D.1984) and *State v. McBride,* 296 N.W.2d 551 (S.D.1980), we held that a post-conviction procedure [2] is the most appropriate means to raise the ineffective assistance of counsel issue. It will be considered, however, on direct appeal when the representation was "so casual that the trial record evidences a manifest usurpation of the appellant's constitutional rights." *State v. Phipps,* 318 N.W.2d 128, 131 (S.D. 1982), reaffirmed in *Tchida, supra.* The representation does not appear from the record to be at all casual. Counsel could very well have concluded as a trial tactic that such an instruction would merely focus the jurors' attention on the defendant's failure to testify. This is why procedures are preferred on this issue which can include the testimony of trial counsel. It is accordingly a matter best reviewed in a habeas corpus procedure.

The judgment of conviction is affirmed.

---

**2.** Now replaced by an expanded Habeas Corpus procedure in SDCL ch. 21–27.

WOLLMAN and MORGAN, JJ., concur.

WUEST, Circuit Judge, Acting as a Supreme Court Justice, concurs.

HENDERSON, J., concurs in result.