CRESCENT ELECTRIC SUPPLY COMPANY, Inc.,

Respondent v.

EMPLOYERS MUTUAL CASUALTY COMPANY,

Appellant

(107 N.W.2d 252)

(File No. 9888. Opinion filed January 27, 1961)

**Roswell Bottom,** Rapid City, for Defendant and Appellant.

**Gunderson, Farrar, Carrell & Aldrich,** Rapid City, for Plaintiff and Respondent.

SMITH, P. J. Employers Mutual Casualty Company, defendant above named, and hereinafter referred to as surety, delivered its performance bond on behalf of a subcontractor, Kruse Electric Company, to the prime contractor, Broadway Construction Company, in connection with the

construction of a school building at Brush, Colorado. During construction plaintiff, Crescent Electric Supply Company of Rapid City, South Dakota, supplied materials to the subcontractor. Before the work was completed under its contract, the subcontractor defaulted. This action is by Crescent Electric against the surety on the performance bond for a balance alleged to be due for materials supplied to the subcontractor which went into the described construction. Three checks of the prime contractor, payable to the subcontractor and the Crescent Electric, representing payment for materials furnished by the subcontractor, were delivered to Crescent Electric, and were applied by it on an open account of the subcontractor. The propriety of this application of those payments by Crescent Electric is the narrow issue presented by this appeal.

The subcontract and the performance bond were in the amount of $21,800. The materials furnished as described amounted to $14,526.67. When the first materials were furnished the subcontractor was indebted to Crescent Electric in the approximate sum of $8,654.71 on open account. The materials so furnished were charged as delivered on this open account. During the progress of the work other materials were furnished to the subcontractor and payments received, which had no relation or connection with the subcontract in question. These items were entered on the open account. During the work the subcontractor executed and delivered to Crescent Electric written assignments aggregating $20,000 of the amount to become due under the subcontract, which assignments, omitting the amount thereof, were in words as follows:

> "This is to advise you that Kruse Electric, Electrical Contractor, doing work on the Brush Elementary School for Broadway Construction Co., has assigned his account and all monies due him from the Broadway Construction Company for work done, or to be done on this project to Crescent Electric Supply Company, Box 1728, Rapid City, South Dakota. * * *

> "Therefore, any checks that you might be sending to Kruse Electric covering work done, or to be done on this project should be made out jointly to Kruse Electric and Crescent Electric Supply Company. * * *"

These assignments were executed by Kruse Electric and Crescent Supply and were delivered to the prime contractor. During the course of construction three payments aggregating $12,581.15 were made by the prime contractor by its checks made payable to Crescent Electric and to the subcontractor. These checks, according to the stipulation of facts "were in fact payments made by the principal contractor Broadway Construction Company for materials furnished by said John Kruse to the Brush Elementary School job * * *" and were delivered by the prime contractor directly to Crescent Electric. However, no express direction was given by anybody as to the application of these payments. Crescent Electric made application upon its open account of the subcontractor to the oldest items due thereon. In this action it alleged that there remained due to it $9,205.72 for materials furnished to the subcontractor and used in the construction of the Brush school.

The facts were stipulated. The trial court entered judgment for plaintiff as prayed. The defendant surety has appealed, and contends that its defense of payment should have been sustained as the Crescent Electric was bound to apply the described payments upon the obligation of the subcontractor for materials which went into the Brush school building.

The application of payments as between a debtor and creditor are controlled by SDC 47.0207 reading in part as follows:

> "Where a debtor, under several obligations to another, does an act by way of performance in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

"(1) If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied;

"(2) If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; except that if similar obligations were due to him, both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of all such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of the debtor;"

Predicated upon subsection (1) of SDC 47.0207 quoted supra, the defendant contends "while there was no direction in words as to the manner of the application of the payments in question, the intention or desire of the debtor and of Broadway Construction, which made the payments, that such payments should be applied to the extinction of the particular obligation, that is the obligation for materials furnished to the particular job, was, under all of the attendant circumstances, manifested to the creditor, Crescent Electric Supply Company, Inc., and that such creditor was, therefore, required to apply such payments accordingly."

The Crescent Electric, on the other hand, insists, that in the absence of an express direction by the prime contractor or subcontractor, it was entitled to act under SDC 47.0207(2), supra, and apply the payments as it did, and that the surety has no such interest or equity in the payments as would qualify it to ask for reapplication of those payments.

By its contentions the Crescent Electric invites us to enter the field which the annotator at 57 A.L.R.2d 873 describes as one of irreconcilable conflict. One line of decisions

best exemplified by United States, for Use and Benefit of Crane Co. v. Johnson, Smathers & Rollins, 4 Cir., 67 F.2d 121, holding that where a surety is bound on one of several debts of the principal debtor to a creditor, and a payment is made by the debtor to the creditor with the identical money for the payment of which the surety is bound, or with the proceeds or fruits of the very contract, business, or transaction covered by the obligation of the surety, the application of the payment to some other debt, with or without the direction or consent of the debtor, does not bind the surety; at least, if the source of the funds is known to the creditor or person receiving the payment, the surety is not bound, and is entitled to have the payment applied to the debt for which it is bound. The opposing view is founded on a holding that an equity does not arise in the surety in such proceeds, and is clearly developed in State Bank of Wheatland, 47 Wyo. 284, 34 P.2d 1. The decision of the trial court was based on the line of holdings last mentioned. It is our view that the stipulated facts and an inference impelled thereby exclude us from that field of controversy.

█ In dealing with the first subsection of SDC 47.-0207 quoted supra, in the case of F. M. Slagle & Co. v. Bushnell, 70 S.D. 250, 16 N.W.2d 914, 156 A.L.R. 1070, and following in the wake of Tayloe v. Sandiford, 7 Wheat. 13, 20, 20 U.S. 13, 20, 5 L.Ed. 384, we adopted the view that "the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation" may be evidenced by circumstances as well as by words. In Tayloe v. Sandiford, supra, it was said "A payment may be attended by circumstances which demonstrate its application, as completely as words could demonstrate it". This, we think, is such a case.

█ The payments we are considering were not made by the subcontractor to his materials supplier; they were made by the prime contractor. While they were made in recognition of the described assignments of the subcontractor in favor of the materials supplier, it is stipulated that they "were in fact payments made by the principal con-

tractor Broadway Construction Company for materials furnished by said John Kruse to the Brush Elementary School job". The prime contractor, as the Crescent Electric well knew, was a stranger to all items appearing on their open account with the subcontractor other than those for materials for the Brush school job. Hence, in the circumstances, we are of the opinion the inference is impelled that it must have been manifest to Crescent Electric that the described checks were tendered by the prime contractor to both it and the subcontractor as payment for that which went into the Brush job. It follows that by the acceptance of that tender the payments were appropriated to the items of the account for materials furnished for the Brush Elementary School.

The judgment of the trial court is reversed.

All the Judges concur.