221 So.2d 461 (1969)
UNITED BONDING INSURANCE COMPANY, Appellant,
v.
ATLANTIC ROOFING & SHEET METAL CO., Inc., Appellee.
UNITED BONDING INSURANCE COMPANY, Appellant,
v.
SOUTHERN PAINT & SUPPLY CO., Inc., Appellee.
UNITED BONDING INSURANCE COMPANY, Appellant,
v.
ATLAS WELDING COMPANY, INC., Appellee.
UNITED BONDING INSURANCE COMPANY, Appellant,
v.
FELLOWS CONSTRUCTION COMPANY, Appellee.
Nos. K-160  K-163.
District Court of Appeal of Florida. First District.
February 6, 1969.
On Rehearing May 1, 1969.
*462 E. Clay Parker, Holly Hill, for appellants.
Coble and Van Wert, Daytona Beach, for appellees.
RAWLS, Acting Chief Judge.
United Bonding Insurance Company, defendant, has appealed adverse judgments in four case brought by subcontractors or materialmen to collect the amounts due and owing for labor and materials used in constructing an apartment complex for Daytona Apartments, Inc., owner.
These four actions, brought under the mechanic's lien law, named as defendants the general contractor, Project Development Corporation of America, and its surety, United Bonding Insurance Company. Default was entered against the general contractor. United's defense was the same in each cause, namely: (1) general denial; (2) failure to perfect lien under Sections 84.061(2) and 84.231; (3) the work or materials furnished were not part of the original plans and were not covered by the bond; and (4) the plaintiffs failed to give the surety timely notice of the general contractor's default as required by the surety bond. In its answers to interrogatories, United noted that the roof was redesigned and other changes were made without its knowledge and consent after its surety bond was issued, and these changes increased the total cost of the project. Summary judgments were entered for the plaintiffs on the pleadings, answers to interrogatories, admissions or affidavits.
On appeal, United has urged three points: 1. Does the bond guarantee payment for contractual changes such as an alteration in the roof design made after the surety bond was issued and without the surety's *463 knowledge and consent, when such changes result in an increase in the total cost of the project? 2. Are subcontractors estopped to sue on the bond where there was no compliance with a bond provision requiring the obligee (owner) to give the surety immediate notice of default of the contractor? 3. Were there any genuine issues of material facts raised by the defendant? We find no merit in appellant's points and affirm.
We have reviewed the records and cannot find substantial evidentiary facts showing a change of concept or such a substantial departure in the overall project from the initial plans as to permit a discharge of the surety. One primary purpose of the legislature in amending Section 84.231[1] in 1963 disallowing pro tanto defenses was to overcome the previously successful efforts of surety companies in securing their discharge by reason of minor changes in specifications during the course of construction. The records in these causes disclose a pattern of nit-picking on the part of the surety  a practice the legislature attempted to eliminate by the enactment of the provision which abolished pro tanto defenses. The trial court properly found that the changes in specifications were not of such consequence as to discharge the surety.
As to the second question, we have difficulty in comprehending appellant's theory that the subcontractors are estopped from suing on the bond because there was no compliance with a bond provision requiring the obligee (owner) to give immediate notice of default of the contractor. We find no duty visited upon a subcontractor to ascertain periodically during the course of construction the financial stability of a general contractor who has been cloaked with an instrument proclaiming to the world that "this job is bonded." We hastily add that we do not condone the type of conduct appellant contended existed here  i.e., a materialman or subcontractor doing business with impunity with a bonded contractor whom they know is "broke" and then demanding from his surety payments of money they knew from the outset were not collectible from the contractor. Under such extreme factual situations, estoppel might well be available. But such is not the case presented by these records. Here, we find the surety underwriting the contractor and, so far as is disclosed, the next concern of the surety is to say to those making valid claims by reason of the assured's default, Why didn't you tell us earlier that our assured was in financial trouble? There was no evidence of lengthy time lapses after payments to subcontractors became due and owing so as to invoke the doctrine of estoppel. Indeed, if any estoppel were floating around, it could well land upon the surety who apparently made no inquiry about its assured until the day of reckoning arrived.
As to the third question, we succinctly say that no genuine issues of material facts were raised by the defendant.
We conclude with the observation that a performance bond and the premium paid therefor encourages an understanding among those in the construction field that a "bonded job" merits a reliance by labor and materialmen that they will be paid for their efforts toward completion of a project. The fundamental concept of fiduciary bonds is to assure performance of the contractual undertaking. In the absence of serious departure from original provisions of the contract, the courts of this State will enforce the surety's undertaking.
The several judgments are affirmed.
JOHNSON and SPECTOR, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
By our opinion filed February 6, 1969, we have affirmed the judgments of *464 the lower court in each of these four cases brought against the appellant bonding company to collect amounts due and owing for labor and material used in constructing an apartment complex in Volusia County, Florida. Subsequent to our said opinion of affirmance, appellees filed a petition for rehearing by which they seek reconsideration of this court's order awarding appellate attorney's fees under Section 627.0127, Florida Statutes, F.S.A., in connection with these appeals.
In support of the petition for rehearing, appellees contend, inter alia, that we have failed to give due consideration to the recommended minimum fee schedule of the Volusia County Bar Association applicable to appeals to this court. Said schedule provides for minimum fees in the amount of $750.00. Our consideration of the petition for rehearing and the matters brought to our attention therein lead us to believe that appellees' attorneys are entitled to a fee compatible with the professional skills necessarily utilized by counsel and, of course, the time which went into the examination of the records on appeal and the writing of the briefs which were submitted. Although these four cases were argued before us together, appellant did not seek consolidation of the cases. Hence, appellees' attorneys were obliged to examine four separate records on appeal which, though similar in general respects, were factually distinctive so as to require separate and independent treatment from the viewpoint of an appellate lawyer. Additionally, appellees' attorneys briefed the four cases separately. The cases were orally argued on the same day however. Thus, appellees' attorneys were not required to be away from their practice on four separate occasions, a factor which doubtless is taken into consideration in the promulgation of minimum fee schedules by our several local bar associations. It is for this reason then that we deem it appropriate to order an award of attorney's fees which takes into consideration the fact that appellees' counsel was required to appear for oral argument on the merits only on one occasion.
Our earlier order herein awarding fees is hereby vacated; and, in lieu thereof, it is ordered that appellees' attorneys be awarded as fees for their services in connection with these appeals the following amounts:

 Case No. K-160  $500.00
 Case No. K-161  $500.00
 Case No. K-162  $500.00
 Case No. K-163  $750.00

RAWLS, Acting Chief Judge, and JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] Now § 713.23, F.S., 1967, F.S.A.