McLAUGHLIN ELECTRIC SUPPLY, a South Dakota Corporation, d/b/a Plainsco, Plaintiff and Respondent,

v.

AMERICAN EMPIRE INSURANCE COMPANY, Defendant and Appellant, (No. 12016)

and

Pete Lien & Sons, Inc., Defendant and Appellant, (No. 12030)

and

Henry J. Bachmeier and Elaine D. Bachmeier, Defendants and Appellants, (No. 12031)

and

Wesley Scholl, d/b/a Scholl Construction Company, Defendant and Appellant, (No. 12042)

and

Knecht Industries, Inc., Birdsall Sand & Gravel Company, and Northwest Pipe Fittings, Defendants and Respondents,

and

Black Hawk Industrial Service, Inc., a South Dakota Corporation, National Bank of South Dakota, Hills Red-E-Mix, and Black Hills Masonry, Defendants.

Nos. 12016, 12030, 12031 and 12042.

Supreme Court of South Dakota.

Argued April 19, 1978.

Decided Aug. 24, 1978.

James H. Wilson of Wilson, Olson & Goodsell, Rapid City, for plaintiff and respondent McLaughlin, and defendants and respondents Knecht, Northwest Pipe Fittings and Birdsall, and defendant and appellant Lien; Gunderson, Farrar, Aldrich, Warder, DeMersseman & Johnson, Rapid City, on the brief for defendants and respondents Knecht and Northwest Pipe Fittings, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on the brief for defendant and appellant Lien and defendant and respondent Birdsall.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant American Empire Ins. Co.

Franklin J. Wallahan of Hanley, Wallahan, Huffman & Konenkamp, Rapid City, for defendants and appellants Bachmeier.

Verne E. Thorstenson, Rapid City, for defendant and appellant Scholl Const. Co.

DUNN, Chief Justice.

This case arises as a result of an alleged failure of Black Hawk Industrial Services, Inc. (Black Hawk), to adequately construct a trailer campground for the Bachmeiers. The issues raised involve mechanics' liens and the liability of American Empire Insurance Company (American), the bonding company. We affirm in part and reverse and remand in part.

The Bachmeiers decided to construct a campground in the Black Hills in 1973. They hired one contractor who could not secure a performance bond, so in May of 1973, they hired Amos Lane, sole owner and stockholder of Black Hawk, to do the job. Mr. Lane and the Bachmeiers agreed on a price of $62,000. An "agreement in principal" was drawn up on June 2, 1973.

Mr. Lane contacted Tony Meier of Kluthe and Lane Insurance Agency about getting a performance bond and left a copy of the June 2nd proposal. Mr. Meier knew it was a rough draft and assumed the attorneys for the various parties would fill in the details as instructed by their clients. The June 2nd document contained no completion date or liquidated damages clause. The process of drafting the final contract was delayed by errors in the drafts and circumstances at the work place. A final contract was signed on July 23, 1973, but backdated with the permission of Mr. Meier to June 29, 1973, the date the bond was issued by

American. Mr. Meier did not request a copy of the final contract before agreeing to backdate the document.

Mr. Lane originally told the Bachmeiers that the job would be done by July 4, 1973, for the tourist season. When it became apparent that it would be much later than that, discussion of a liquidated damages clause took place. Prior to July 23, 1973, Mr. Lane was informed by state and local health officials that all the trailer beds had to at least have a water hookup. This required a change in the water tank size and more dirt work to place the tank. Both parties agreed to raise the price to $66,000 to cover the new plans and the $66,000 figure was the one that appeared on the final contract and the bond. The Bachmeiers made it clear that they could spend no more than that amount.

A final contract contained an August 6, 1973 completion date, a $300 per day liquidated damages clause, and a change in the number of trailer beds as set out later in this opinion. The work was not completed on time, and the work that was done was of a very poor quality.

McLaughlin Electric Supply, one of the holders of a mechanic's lien, sued the Bachmeiers, Black Hawk, the bank holding the mortgage, and American. The Bachmeiers cross claimed against Black Hawk and American. The following mechanic's lien claimants were joined in the action: Birdsall Sand & Gravel, Black Hills Masonry, Hills Red-E-Mix, Knecht Industries, Pete Lien & Sons, Inc. (Lien), Northwest Pipe Fittings and Wesley Scholl, d/b/a Scholl Construction Company (Scholl). Trial was had before the Circuit Court, Seventh Judicial Circuit, commencing on October 1, 1974, without a jury, and judgment was entered July 1, 1976.

The trial court concluded that Black Hawk had breached its contract and awarded the Bachmeiers $56,882.91 plus $18,000 in liquidated damages for delay in completion. The $18,000 was not allowed to be collected against the bond, and the court also set off $12,993.80 for "extra dirt work" that the contractor had done pursuant to a "separate, oral agreement" according to the court. A further $20,849.66, which was the amount the Bachmeiers still owed Black Hawk on the contract, was set off from the Bachmeiers' award. Lien and Scholl, as well as several other lien claimants, were found to have filed defective mechanic's liens but were allowed to recover against the bond money as unpaid materialmen on the theory of unjust enrichment. They were not allowed attorney fees, however. American appealed the decision, the Bachmeiers cross-appealed, and, finally, Lien and Scholl cross-appealed from that part of the judgment which was adverse to them.

The trial court placed a $66,000 maximum on the total recovery against American, so the issues raised involve a dispute among all the appellants as to how to divide the money. Further factual details are given in the discussion of the various issues raised on appeal.

We must first determine whether the changes between the contract signed on July 23, 1973, and backdated to June 29, 1973, and the "agreement in principal" were so material that American should be relieved of liability on its bond. This court has stated that:

"' * * * The rule seems to be thoroughly well established that where alterations and changes are made pursuant to such agreement they are binding upon the surety unless they are so extensive and material as to amount to a departure from the original contract rather than a permissible modification of its details.'" *Independent School District No. 41 v. Sloan*, 1929, 54 S.D. 646, 649, 224 N.W. 182, 183.

A paid surety must show prejudice or damage as a result of the change, and if the prejudicial aspect of the change can be easily measured and excised, the surety remains liable on the original contract. Restatement of the Law, Security, § 128(b); *Zuni Construction Co. v. Great American Ins. Co.*, 1970, 86 Nev. 364, 468 P.2d 980; *Pacific Cty. v. Sherwood Pacific, Inc.*, 1977, 17 Wash.App. 790, 567 P.2d 642; *United Bond. Ins. Co. v. Atlantic Roofing & Sh. Met. Co.*,

1969, Fla.App., 221 So.2d 461; *Ferguson Contract. Co. v. Charles E. Story Const. Co.*, 1967, Ky., 417 S.W.2d 228; *Development Corp. of America v. United Bonding Ins. Co.*, 1969, 5 Cir., 413 F.2d 823.

▆ The major changes between the two agreements were the liquidated damages clause, a completion date, and a change in the number of camper pads from 115, including 75 with no utility hookups, to 108, including 68 pads with water-only hookups. The change in the number of pads did not increase the risk in any way and is the kind of change expected to result as a project develops, so the bonding company should not escape liability on that basis. The completion date and the liquidated damages clause definitely increased the risk and for that reason were excised by the trial court. The Bachmeiers contend that American's agent knew of the damages clause before agreeing to the contract, but the evidence on this point was contradictory. The trial court refused a proposed finding to that effect and concluded that American was not liable for the liquidated damages. Since there was evidence in the record to support this decision by the trial court, we will not disturb that finding by the trial court. SDCL 15–6–52(a); *City of Rapid City v. Hoogterp*, 1970, 85 S.D. 176, 179 N.W.2d 15; *Mulder v. Tague*, 1971, 85 S.D. 544, 186 N.W.2d 884. We hold, therefore, that the trial court properly concluded that American was liable on the contract after excising the liquidated damages clause. The damages from this claim ($18,000) were easily ascertained and left American liable on the balance of the contract.

▆ We must next determine whether the trial court erred in setting off a sum for "extra dirt work" done pursuant to a separate oral agreement between the Bachmeiers and Amos Lane. Mr. Lane conceded at

trial that he knew in mid-June that the work had to be done and that it was all completed by the middle of July. The record also shows that the Bachmeiers made it very clear that they could not spend over $66,000 on the project. The contract was signed in late July and backdated to June 29, 1973, and no mention was made in it of the "extra work." SDCL 53–8–5 states:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the, instrument."

In addition to the above testimony, Mr. Lane testified that the oral agreement was made on June 20 or 21, 1973; therefore, we are of the opinion that this agreement was merged into the later written contract which was dated June 29, 1973.[1] *Kindley v. Williams*, 1956, 76 S.D. 225, 76 N.W.2d 227, 57 A.L.R.2d 1070. We conclude, therefore, that the trial court erred in allowing a set off for extra work done pursuant to an alleged oral agreement between the Bachmeiers and Black Hawk, and we reverse that part of the judgment.

Lien and Scholl have appealed the trial court's determination that their mechanic's liens were defective for failing to properly itemize the services rendered. The trial court acted in reliance on this court's opinion in *Crescent Electric Supply Co. v. Nerison*, 1975, S.D., 232 N.W.2d 76. We will examine each lien separately.

▆ Lien's lien had attached to it itemized statements which are very similar to the one found defective in *Crescent Electric*, supra, in that they merely show the date, ticket number and charge. It is necessary to have the actual invoices and a key to understand the itemization code. In *Crescent Electric*, supra, we concluded that

---

1. This ruling is distinguishable from our recent holding in *Drier v. Perfection, Inc.*, 1977, S.D., 259 N.W.2d 496, by the fact that *Drier* involved application of the Uniform Commercial Code, whereas a contract such as this one does not come within the purview of the U.C.C. provisions. *Rose Acre Farms, Inc., v. L. P. Cavett Co. of Indiana*, 1972, 151 Ind.App. 268, 279 N.E.2d 280; *Gulash v. Stylarama, Inc.*, 1975, 33 Conn.Sup. 108, 364 A.2d 1221; *Pittsburgh-Des Moines Steel v. Brookhaven Manor Wat.*, 1976, 7 Cir., 532 F.2d 572. For this reason the more liberal parol evidence rule set out in the U.C.C. and in our statutes at SDCL 57–3–4 is inapplicable to this contract.

to allow such an itemization would be stretching the liberal construction of the mechanics' lien statute too far. The problems noted with the *Crescent Electric* form were that it was impossible to know the ultimate destination of the goods sold or the number and nature of the materials involved. Lien's lien, however, supplies this information on the cover by stating each different type of rock hauled and the cost for each type. We conclude that the Lien lien is not fatally defective and that it gives notice to the parties of the extent of the claim.

■ The trial court similarly found that Scholl's lien was defective for failure to properly itemize the claim. Scholl's lien lists the destination of the material and also lists the quantity of each item, together with a description of the item and the price. It does not suffer from the defects contained in *Crescent Electric,* supra, and we conclude that the Scholl lien was not defective for failure to properly itemize.

■ On examining the record, however, we are convinced that Scholl's lien was defective because it was not filed in a timely manner. Wesley Scholl testified that the last date that services and/or materials were rendered which contributed to the improvement of the project was November 15, 1973. He also testified that he came out to the site on November 20, 1973, "to check over and see whether the men had completed, picked up their tools, done a little cleanup work," but did not charge anyone for this work. His lien was filed on March 19, 1974, which was 124 days from November 15, 1973, but 119 days from November 20, 1973. SDCL 44–9–15 sets a limit of 120 days for filing a lien, and this court has held that the lien terminates absolutely unless filed within the time prescribed. *F. H. Peavey & Company v. Whitman,* 1966, 82 S.D. 367, 146 N.W.2d 365. We have also held that periodic tests and service calls or

furnishing of replacement items on a job cannot be used to extend the time for filing a lien. *Barry v. G. L. Wood Farm Mortgage Co.,* 1927, 50 S.D. 652, 211 N.W. 688; *Thorson v. Pfeifer,* 1966, 82 S.D. 313, 145 N.W.2d 438. The trial court rejected a proposed finding that Scholl's lien was untimely, but, since the facts are undisputed, we conclude that it was error to reject the proposed finding and hold that Scholl's lien was defective because it was not filed in a timely manner.

■ Finally, we must determine whether the trial court acted properly in giving priority to unpaid materialmen who had failed to perfect mechanic's liens and in allowing the parties who had perfected liens to recover directly against the bond. The established rule in South Dakota is that under ordinary circumstances, a property owner will not be held personally liable for work or materials furnished by a subcontractor to a contractor according to a contract between the contractor and subcontractor, where the property owner is not a party to the contract. This has been expressed by this court in *Keeley Lumber and Coal Co. v. Dunker,* 1956, 76 S.D. 281, 77 N.W.2d 689, as follows: [2]

> "The purchase of materials by the contractor could only operate to charge the property of the defendants with a lien and could not charge them with personal liability." 76 S.D. at 287, 77 N.W.2d at 692.

The importance of privity of contract is underscored in SDCL 44–9–49 which states that

> "[n]o failure to comply with any of the provisions of this chapter (mechanics' and materialmen's liens) shall affect the right of any person to recover, in an ordinary civil action, from <u>the party with whom he has contracted</u>." (emphasis added)

Applying the authority cited above, we find that the subcontractors who did not

---

2. *See also G & B Contractors, Inc. v. Coronet Developers,* 1975, 134 Ga.App. 916, 216 S.E.2d 705; *Dale's Service Company, Inc. v. Jones,* 1975, 96 Idaho 662, 534 P.2d 1102; *R. D. Reeder Lathing Co. v. Allen,* 1967, 66 Cal.2d 373, 57 Cal.Rptr. 841, 425 P.2d 785; *Rogers v. Whitson,* 1964, 228 Cal.App.2d 662, 39 Cal.Rptr. 849, 32 Cal.Jur.2d Mechanics' Liens § 166, pp. 801–802; 62 A.L.R.3d 288, 297–303.

properly perfect mechanic's liens have no claim against the Bachmeier property, and, further, that absent any privity of contract such subcontractors shall neither recover against the Bachmeiers personally nor against American. These subcontractors, however, do have the option of pursuing an ordinary civil action on their respective contracts with Black Hawk. SDCL 44–9–49.

With regard to those subcontractors who have properly perfected their mechanic's liens, they have a valid claim against the Bachmeier property and may proceed in accordance with the provisions of SDCL 44–9. They, however, do not have a right to a judgment holding the Bachmeiers personally liable for work or materials furnished by them. The Bachmeiers have the right to recover against American on the bond in order to satisfy the total amount of the properly executed and filed mechanic's liens.

Upon consideration of the entire record and the complex issues raised by this appeal, we affirm the trial court's finding as to the bonding company's liability, reverse the judgment allowing a set off for extra work done by the contractor, reverse the judgment relating to materialman and mechanic lienholders, and remand the case to the trial court for actions consistent with this opinion.

WOLLMAN, PORTER and MORGAN, JJ., and HOYT, Circuit Judge, concur.

HOYT, Circuit Judge, sitting for ZASTROW, J., disqualified.