**R & L SUPPLY, LTD., a South Dakota Corporation, Plaintiff and Appellee,**

v.

**EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, Defendant and Appellant,**

and

**Meester Plumbing and Heating, Inc., Defendant.**

No. 16967.

Supreme Court of South Dakota.

Considered on Briefs Sept. 19, 1990.

Decided Nov. 7, 1990.

John L. Wilds, Sioux Falls, for plaintiff and appellee.

E. Steeves Smith of Tinan & Smith, Mitchell, and Peter J. Horner of Christopherson, Bailin & Anderson, Sioux Falls, for defendant and appellant.

Robert L. Jones, Sioux Falls, for defendant.

WUEST, Justice.

Evangelical Lutheran Good Samaritan Society (Evangelical), through Mueller Lumber Company of Mitchell, South Dakota on tender of defense, appeals from an order of foreclosure of a mechanic's lien on the improved real property of Evangelical. We affirm in part, reverse in part, and remand.

Evangelical Lutheran Good Samaritan Society owns and operates a nursing home in DeSmet, South Dakota. Evangelical hired Mueller Lumber Company (Mueller Lumber) to construct an addition to its nursing home. Mueller Lumber then hired Meester Plumbing and Heating, Inc., (Meester) as a subcontractor to do the plumbing and mechanical work on the nursing home project (hereafter referred to as the DeSmet project). In early 1988, Meester began purchasing materials and supplies for this project from R & L Supply, Ltd. (R & L) on an open account, that is, R & L would charge purchases to Meester's one, single account without regard for which particular project the materials or supplies were designated. R & L and Meester had conducted business in this manner for at least the last fifteen years. Meester was delinquent on its open account with R & L since late 1987, which necessitated R & L's carrying forward Meester's debt into 1988.

At the time Meester was engaged in the DeSmet project and purchasing needed materials from R & L, Meester was also engaged in a number of other construction projects. It was the practice of Meester to commingle the funds received from prime contractors on the various projects and issue checks from this commingled account to its suppliers.

R & L furnished Meester materials and supplies for the DeSmet project worth $34,786.54. Meester contends it paid R & L $32,038.76 for these materials and supplies by four separate checks issued from its commingled account:

A. June 14, 1988, in the sum of $10,000.00.

B. July 18, 1988, in the sum of $9,329.76.

C. August 11, 1988, in the sum of $4,709.00 (designated DeSmet).

D. November 10, 1988, in the sum of $8,000.00 (designated DeSmet).

Because Meester and R & L were located only a few blocks apart, these checks were hand delivered, as was customary in their business relationship.

In mid-November 1988, R & L segregated Meester's open account into specific job

accounts in preparation for filing mechanic's liens on the several jobs. With regard to the DeSmet account, which was segregated from the open account, R & L applied the total of the August 11th and November 10th checks, $12,709.00, toward the DeSmet project debt. This was done by randomly selecting invoices so as to get as close to the $12,709.00 figure as possible.[1] The remaining invoices R & L considered unpaid, and although R & L knew the money for the June 14th and July 18th checks had come from Mueller Lumber, the prime contractor on the DeSmet project, it nevertheless applied those funds to extinguish debts for materials other than those supplied to the DeSmet project.

On December 31, 1988, Jeff Scott of Meester and Robert Larson of R & L met to discuss R & L granting a lien waiver to Meester on the materials used in the DeSmet project. Mr. Scott brought to this meeting the four checks previously written to R & L, however, "DeSmet" now appeared in the memo portion of all the checks. In disbelief, Mr. Larson inquired at R & L's bank and was informed that "DeSmet" was not present in the memo portion of the June and July checks on the day those checks were processed by the bank. It was revealed at trial that after return from the bank, "DeSmet" was written in the memo portion of the June and July checks by the secretary of Meester for bookkeeping purposes.

On January 24, 1989, R & L gave Meester a lien waiver for $12,709.00 on the invoices which had been previously segregated from Meester's open account and considered paid by the August 11th and November 10th checks. On March 28, 1989, R & L filed a mechanic's lien in the amount of $22,077.46 on the improved real property of Evangelical in DeSmet. Attached to the mechanic's lien were those invoices not selected by R & L as paid by the August 11th and November 10th checks.

R & L brought an action against Evangelical and Meester to foreclose its mechanic's lien. Evangelical tendered the defense of this action to Mueller Lumber, which accepted the tender. A trial was held and the court concluded that R & L's application of Meester's checks was proper, that R & L's mechanic's lien was valid and that the invoices attached to the mechanic's lien constituted an itemized account in accordance with law.

Evangelical, through Mueller Lumber on tender of defense, contends that:

    I. R & L's application of the June 14th and July 18th checks to extinguish debts on Meester's open account other than the debts of the DeSmet project was improper because R & L knew the source of those funds was Mueller Lumber and Evangelical,

    II. R & L's mechanic's lien is void because R & L knowingly overstated the amount that was due, and

    III. R & L's mechanic's lien did not contain an itemized statement of account as required by SDCL 44–9–16(7).

We address these contentions seriatim.

### I.

Larson Concrete Co., Inc. v. Stroschein, 353 N.W.2d 354 (S.D.1984) (Fosheim, C.J., dissenting; Wollman, J., concurring in part, dissenting in part) is dispositive of the issue whether R & L properly applied the funds from the June and July payments. In *Larson*, a contractor received payment in full from the owner of real property upon which the contractor was working and commingled such payment in a single account with other payments from other projects. The contractor then issued a check to the supplier of the materials for the owner's project. The check covered only part of that amount due the supplier for materials furnished to the owner's project. The contractor maintained an open account with the supplier, and after receiving the partial payment, the supplier credited the contractor's open account with-

---

**1.** The small difference between the total sum of the invoices and the $12,709.00 figure was dis-

counted.

out regard to any specific project. Upon default by the contractor, the supplier filed a mechanic's lien on the owner's improved real property and brought a foreclosure action.

We agreed with the trial court in the foreclosure action that SDCL 20-4-7, -8, -9 contain the rules for the application of open account payments, even where third parties are involved. However,

> as a matter of law the statutes do not preclude ... consideration of equitable principles, nor the exercise of ... discretion in determining the most just and equitable application of a payment on an open account.

*Larson,* 353 N.W.2d at 356. We held:

> [T]he equitable principle set forth in 53 Am.Jur.2d, Mechanic's Liens, Section 330, pp. 857–58 and recognized in many states that when suppliers furnish materials to contractors on an open account and deliver materials to more than one project, any payment made by the contractor to the supplier, which the supplier knows originated from a specific project, must be applied to the account billing for that project and not to another.

*Id.* at 357.

It is clear from the trial testimony of Mr. Larson, a majority shareholder of R & L Supply, Ltd., that R & L knew the June 14th and July 18th checks originated from the DeSmet project.

> Q   And you knew at the time that you received the check for $10,000 on June 14, 1988, did you not, that the source of those funds was from the DeSmet job?
> A   It wasn't specified on the check.
> Q   I'm not asking you what was on the check. The exhibit would speak for itself. I agree it wasn't on the check, but when it was delivered to you, you knew that that's where the money came from?
> A   That's what was stated, yes.
> Q   So when you accepted it, you knew it was money that came—that Jeff Scott got from the Good Samaritan Society, correct?
> A   Yes.
> Q   And wasn't the same true on July 18th of 1988 when you got the next

check for $9,326 and some odd cents? When you got that check, you knew that the source of those funds also came from the DeSmet job; isn't that true?
> A   It wasn't designated on the check.
> Q   I realize it's your position it wasn't on the check; but when it was delivered to you, you knew that's where the money came from because of the conversations you had had with Jeff Scott, correct?
> A.   Yes.

Applying the rule and equitable principles established in *Larson,* we hold the proceeds of the June 14th and July 18th payments are to be applied to extinguish the debt of Meester with respect to materials used in the DeSmet project. The trial court was in error on this issue and we reverse and remand for action in accordance with our decision.

II.

Having determined that the June 14th and July 18th checks totalling $19,329.76 are to be applied to the DeSmet project account, it is clear that R & L substantially overstated its claim on the mechanic's lien. We are thus faced with the issue, which was raised by Evangelical on appeal, whether R & L's mechanic's lien is void by reason of its filing an exaggerated claim.

Where a lienor intentionally and willfully files a false or exaggerated claim, the law will not assist in the enforcement of the lien. *Bohn Mfg. Co. v. Keenan,* 15 S.D. 377, 89 N.W. 1009 (1902); *Smith v. Allmendinger,* 41 S.D. 144, 169 N.W. 512 (1918). *See also Ringgenberg v. Wilmsmeyer,* 253 N.W.2d 197 (S.D.1977). However, if the inaccuracy of the claim resulted from an honest mistake or an honest belief in its correctness, the lien will not be lost. *Keeley Lumber and Coal Co., Inc. v. Dunker,* 76 S.D. 281, 77 N.W.2d 689 (1956); *Wittrock v. Hall,* 51 S.D. 39, 211 N.W. 801 (1927); *Bohn, supra.* Where the lien claim is grossly exaggerated, the burden of establishing good faith in filing the claim is upon the claimant. *E.S. Gaynor Lumber Co. v. Morrison,* 75 S.D. 132, 60 N.W.2d 83 (1953).

We do not find that R & L acted with bad faith in filing their claim. There is no evidence of fraud on their part, nor an absence of diligence in determining and stating the DeSmet account. R & L did not state their claim in excess of legitimate billing invoices, *cf. Bohn, supra,* nor did they knowingly or recklessly file a claim for materials not used in the DeSmet project, *cf. Gaynor Lumber, supra.* It appears R & L acted in good faith but with a mistaken understanding of the interplay between SDCL 20–4–7, –8, –9 and SDCL ch. 44–9, and the significance of their knowledge of the source of the June and July payments. We find R & L filed its claim with an honest belief in its correctness. Consequently, we hold that R & L's lien is valid, but only to the extent it exceeds $19,329.76, the total of the June 14th and July 18th checks.

### III.

Evangelical's third contention concerns the itemization of the DeSmet account filed with R & L's Statement of Claim for Mechanic's Lien. SDCL 44–9–16(7) requires a lien claimant's lien statement to set forth "[a]n itemized statement of the account upon which the lien is claimed." While this statutory language is to be liberally construed, the lien claimant must nevertheless substantially comply with its requirements. *Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 232 N.W.2d 76 (1975). *See Ringgenberg v. Wilmsmeyer,* 253 N.W.2d 197 (S.D.1977). Failure to sufficiently itemize the account renders the lien invalid. *H & R Plumbing & Heating, Inc. v. FDIC,* 406 N.W.2d 151 (S.D.1987).

In *McLaughlin Electric Supply v. American Empire Insurance Co.,* 269 N.W.2d 766, 770 (S.D.1978) we held that a lien statement which listed the destination of the materials, quantity of each item, together with a description of the item and its price was sufficiently itemized for purposes of SDCL 44–9–16(7). *Cf. H & R Plumbing, supra; Builders Supply Co. Inc., v. Carr,* 276 N.W.2d 252, 255 (S.D. 1979); *Crescent Electric, supra.* The invoices which R & L filed with its claim for a mechanic's lien indicate the destination of the materials listed on the invoices (DeSmet), the quantity of each item, a brief description of each item and the price of each item. Such an itemization is sufficient to notify an ordinarily intelligent and careful person of the materials supplied to Meester for the DeSmet project. *Cf. H & R Plumbing,* 406 N.W.2d at 153. Consequently, and consonant with *McLaughlin,* we find the invoices of R & L a sufficient itemization of the account upon which its lien is claimed. We affirm the trial court on this issue.

Affirmed in part, reversed in part and remanded for action in accordance with our decision.

All the Justices concur.